UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION


L.T. TUCKER, JR.,

        Plaintiff,

v.                                  Case No. 2:04-cv-84
                                  HON. GORDON J. QUIST

BARBARA BOUCHARD, et al.,

        Defendants.

_____/


## REPORT AND RECOMMENDATION

        Plaintiff L. T. Tucker, Jr., an inmate at the Alger Maximum Correctional Facility

(LMF), filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against Defendants Warden

Barbara Bouchard, D. Gramm, C. Bauman, D. Gerth, D. McBurney, R. Johnson, D. Bergh, and

C. Rife.  Plaintiff alleges in his complaint that he has been a "jailhouse lawyer" for the past 25 years.

Plaintiff has been in administrative segregation since March of 1993, and has been incarcerated at

LMF since July of 2001.  During Plaintiff's confinement at LMF, he has filed between 150 and 200

grievances.  Plaintiff further claims that, at the time he filed this complaint, he had over five civil

actions pending against subordinates of Defendant Bouchard, as well as directly against Defendants

Bouchard and McBurney.

        Plaintiff alleges that, because of his conduct in filing grievances and civil rights

actions, he has been denied access to the courts, and was subjected to excessive force in the form of

a "biocide chemical agent" on December 26, 2001.  Plaintiff also claims that he was subjected to

incidents of assault and battery on December 26, 2001, November 14, 2003, and February 10, 12,

13, 14, and 15 of 2003.  Plaintiff was denied his medical diet from July, 2001, until April 25, 2002, and from February, 2004, until March, 2004.  Plaintiff's food trays were taken unlawfully and Plaintiff was arbitrarily placed on food restriction from January 6, 2003, until January 12, 2003.

Plaintiff alleges that Defendants have threatened him with excessive force and false misconduct reports numerous times between July, 2001, and March, 2004.  Plaintiff was placed in a housing unit with 99% mentally ill prisoners as punishment for filing civil actions and grievances. In addition, Plaintiff was threatened with being placed on suicide watch.  Plaintiff's legal property was taken and destroyed on October 18, 2002, which caused Plaintiff to suffer prejudice in meeting the filing deadline of October 26, 2002, in a pending action.  Plaintiff contends that his incoming and outgoing mail, both legal and personal, was taken and destroyed.  This included mail from an attorney, which was taken on December 26, 2001, and July 15, 2002, causing prejudice to a contemplated motion for relief from judgment in the state court.

Plaintiff contends that on February 9, February 17, March 24, and April 5 of 2004, Defendant Bauman told Plaintiff that he complained too much and could not expect any help from him.  Defendant Bauman also stated that he wanted to kill Plaintiff and planned on kicking Plaintiff's "ass."  Defendant Bauman indicated that he would have Plaintiff taken out of his cell in order to assault him and that staff was going to "beat on [Plaintiff's] head like [staff] did [prisoner] Brown."  Plaintiff alleges that Defendant McBurney and his co-workers also threatened Plaintiff on April 1, 2, 5, 6, 7, and 8 of 2004.  Plaintiff states that on April 1, 4, and 6 of 2004, Defendant McBurney's co-worker assaulted Plaintiff while he was being returned to his cell from the showers. Following the assaults, Defendant McBurney came to Plaintiff's cell and stated that staff would continue to assault Plaintiff until he stopped his "legal shit."  A co-worker of Defendants also took

Plaintiff's food trays on March 31, April 1, April 4, April 6 and April 7 of 2004, which Plaintiff claims was because of his legal work.

      Plaintiff claims that misconduct reports were falsified against him and that he was discriminated against because of his membership in a protected class, that of "jailhouse lawyer." In addition, Plaintiff claims that the tickets were motivated by a desire to retaliate against Plaintiff for filing grievances against LMF employees and that the tickets resulted in over 400 days of disciplinary sanctions and continued confinement in administrative segregation. Plaintiff claims that the named defendants conspired with one another to retaliate against Plaintiff. Plaintiff alleges that each defendant in this case expressed words "to the effect that" Plaintiff was being punished because of his use of the grievance and legal systems. Plaintiff states that Defendants are in possession of documents which show that their actions were motivated by a desire to retaliate. Plaintiff seeks compensatory and punitive damages.

      Defendants filed a motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Summary judgment is appropriate only if the moving party establishes that there is no genuine issue of material fact for trial and that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). If the movant carries the burden of showing there is an absence of evidence to support a claim or defense, then the party opposing the motion must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial. *Id.* at 324-25. The nonmoving party cannot rest on its pleadings but must present "specific facts showing that there is a genuine issue for trial." *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)). While the evidence must be viewed in the light most favorable to the nonmoving party, a mere scintilla of evidence in support of the nonmovant's position will be insufficient. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

251-52 (1986). Ultimately, the court must determine whether there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252. *See also Leahy v. Trans Jones, Inc.*, 996 F.2d 136, 139 (6th Cir. 1993) (single affidavit, in presence of other evidence to the contrary, failed to present genuine issue of fact); *cf. Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1448 (6th Cir. 1993) (single affidavit concerning state of mind created factual issue).

Defendants have asserted that plaintiff has failed to show that he exhausted his grievance remedies. Plaintiff has asserted that defendants have misread his complaint. Plaintiff explains that he is only suing defendants on claims that he has filed grievances upon through Step III. Plaintiff explains that those claims are (1) retaliation under the first amendment, (2) purposeful discrimination because plaintiff as a jail house lawyer is a member of a protected class (3) disparate treatment of similarly situated individuals and (4) defendants have a pattern and practice of taking adverse action against plaintiff to keep him in administrative segregation. Assuming that plaintiff has exhausted these claims, defendants are entitled to summary judgment on the claims.

Defendants Bouchard, Rife, Bergh and Gerth argue that they are entitled to dismissal for lack of personal involvement because their only involvement in this action was responding to grievances. A party cannot be held liable under Section 1983 absent a showing that the party personally participated in, or otherwise authorized, approved or knowingly acquiesced in, the allegedly unconstitutional conduct. *See e.g. Leach v. Shelby Co. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989), *cert. denied*, 495 U.S. 932 (1990); *Hays v. Jefferson*, 668 F.2d 869, 874 (6th Cir.), *cert. denied*, 459 U.S. 833 (1982). *See also Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir.), *cert. denied* 469 U.S. 845 (1984).

Supervisory officials can be held liable for the acts of their subordinates only if plaintiff establishes that the supervisor failed to appropriately discharge his supervisory duties, and

that this failure resulted in a denial or deprivation of plaintiff's federal rights.  *See e.g. Leach*, 891 F.2d at 1246; *Hayes v. Vessey*, 777 F.2d 1149, 1154 (6th Cir. 1985).  However, the failure of a supervisor to supervise, control or train the offending employee is not actionable absent a showing that the official implicitly encouraged, authorized, approved or knowingly acquiesced in, or in some other way directly participated in, the offensive conduct.  *Leach*, 891 F.2d at 1246.  Such a claim requires, at a minimum, that the official had knowledge of the offending employee's conduct at a time when the conduct could be prevented, or that such conduct was otherwise foreseeable or predictable.  *See e.g. Gibson v. Foltz*, 963 F.2d 851, 854 (6th Cir. 1992).  In addition, plaintiff must show that defendant had some duty or authority to act.  *See e.g. Birrell v. Brown*, 867 F.2d 956, 959 (6th Cir. 1989) (lower level official not liable for shortcomings of building); *Ghandi v. Police Dept. of City of Detroit*, 747 F.2d 338, 351 (6th Cir. 1984) (mere presence at the scene is insufficient grounds to impose Section 1983 liability in the absence of a duty to act); *accord Hall v. Shipley*, 932 F.2d 1147 (6th Cir. 1991).  In addition, merely bringing a problem to the attention of a supervisory official is not sufficient to impose such liability.  *See Shelly v. Johnson*, 684 F. Supp. 941, 946 (W.D. Mich. 1987) (Hillman, C.J.), *aff'd* 849 F.2d 228 (6th Cir. 1988).  Finally, supervisory liability claims cannot be based on simple negligence.  *Leach*, 891 F.2d at 1246; *Weaver v. Toombs*, 756 F. Supp. 335, 337 (W.D. Mich. 1989), *aff'd* 915 F.2d 1574 (6th Cir. 1990).  A constitutional claim does not exist to correct an improper grievance outcome.  Defendants cannot be liable for such conduct under § 1983.  *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999), *cert. denied*, 530 U.S. 1264, 120 S. Ct. 2724 (2000).  Accordingly, it is recommended that defendants Bouchard, Rife, Bergh and Gerth be dismissed for lack of personal involvement.

Plaintiff claims that he was denied equal protection of the law because he is a jail house lawyer and because other individuals have been treated differently.  The Equal Protection

Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike.  U.S. CONST., amend. XIV; *City of Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432, 439 (1985).  A state practice generally will not require strict scrutiny unless it interferes with a fundamental right or discriminates against a suspect class of individuals.  *Massachusetts Board of Retirement v. Murgia*, 427 U.S. 307, 312 (1976).  Although, plaintiff asserts that he is a member of a suspect class because he is a jail house lawyer, plaintiff has presented no authority for the court to conclude that a jail house lawyer could be considered a member of a suspect class.  Because a fundamental right is not implicated in this case and plaintiff is not a member of a suspect class, plaintiff is not entitled to strict scrutiny.  Instead, the decision to continue plaintiff's administrative segregation placement need only be rationally related to a legitimate governmental interest.  *See United States v. Kras*, 409 U.S. 434, 446 (1973) ; *Hampton v. Hobbs*, 106 F.3d 1281, 1286 (6th Cir. 1997).  To prove his equal protection claim, Plaintiff must demonstrate "intentional and arbitrary discrimination" by the state; that is, he must demonstrate that he "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment."  *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).  Plaintiff has not shown that he was treated differently than any similarly situated individual.

Similarly, plaintiff has alleged that defendants have retaliated against him by continuing to keep him in administrative segregation.  Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution.  *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 *1037 (6th Cir.1999) (en banc).  In order to set forth a First Amendment retaliation claim, a plaintiff must establish that:  (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and

(3) the adverse action was motivated, in least in part, by the protected conduct. *Thaddeus-X*, 175 F.3d at 394. Moreover, Plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Defendants have explained that plaintiff is in administrative segregation because he has obtained a large number of misconduct tickets which include, for example, assault resulting in injury to staff, sexual assault, sexual misconducts, inciting a riot or strike, threatening behavior and dangerous contraband. Plaintiff has been found guilty of over 210 misconduct tickets and his current placement is solely due to his behavior and attitude. The prison routinely monitors plaintiff and evaluates his need for administrative segregation on a monthly basis. Plaintiff has failed to show that his placement in administrative segregation was the result of some improper action taken by any of the defendants. The record shows that plaintiff is confined in administrative segregation because his behavior requires that placement.

Government officials, performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999); *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997); *Noble v. Schmitt*, 87 F.3d 157, 160 (6th Cir. 1996); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). An "objective reasonableness" test is used to determine whether the official could reasonably have believed his conduct was lawful. *Dietrich*, 167 F.3d at 1012; *Anderson v. Creighton*, 483 U.S. 635, 641 (1987).

"The procedure for evaluating claims of qualified immunity is tripartite: First, we determine whether a constitutional violation occurred; second, we determine whether the right that

was violated was a clearly established right of which a reasonable person would have known; finally, we determine whether the plaintiff has alleged sufficient facts, and supported the allegations by sufficient evidence, to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights." *Williams v. Mehra*, 186 F.3d 685, 690 (6th Cir. 1999).

When determining whether a right is clearly established, this court must look first to decisions of the United States Supreme Court, then to decisions of the Sixth Circuit and to other courts within this Circuit, and finally to decisions of other circuits. *Dietrich*, 167 F.3d at 1012. An official action is not necessarily protected by qualified immunity merely because the very action in question has not previously been held to be unlawful. Rather, in light of pre-existing law, the unlawfulness of the official's conduct must be apparent. *Dietrich*, 167 F.3d at 1012; *Wegener v. City of Covington*, 933 F.2d 390, 392 (6th Cir. 1991).

When making a qualified immunity analysis, the facts must be interpreted in the light most favorable to the plaintiff. Part of the analysis is to determine whether there are any genuinely disputed questions of material fact. *Kain v. Nesbitt*, 156 F.3d 669, 672 (6th Cir. 1998). Where there is a genuinely disputed question of fact, it is for the trier of fact to resolve, not the judge. "This would be true notwithstanding that the trial judge found the [defendant] officer to be more credible than the plaintiff because it is not for the court to make credibility determinations at this stage of the proceeding." *Id.*

The operation of the qualified immunity standard depends substantially upon the level of generality at which the relevant legal rule is to be identified.

> The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified

immunity unless the very action in question has previously been held unlawful, but it is to say that in light of the preexisting law the unlawfulness must be apparent.

*Anderson*, 483 U.S. at 639-40.  *See also Durham v. Nu'Man*, 97 F.3d 862, 866 (6th Cir. 1996), *cert. denied*, 520 U.S. 1157 (1997).

> The Sixth Circuit has observed:

> A right is not considered clearly established unless it has been authoritatively decided by the United States Supreme Court, the Court of Appeals, or the highest court of the state in which the alleged constitutional violation occurred.

*Durham*, 97 F.3d at 866 (citing *Robinson v. Bibb*, 840 F.2d 349, 351 (6th Cir. 1988)).

Thus, qualified immunity is not triggered only where the very action in question was previously held unlawful.  *Anderson*, 483 U.S. at 639-40.  Rather, the test is whether the contours of the right were sufficiently clear that a reasonable official would understand that what he is doing violated plaintiff's federal rights.  *Id.*

Furthermore, a defendant need not actively participate in unlawful conduct in order to be liable under Section 1983.  Rather, a defendant may be liable where he has a duty to protect a plaintiff and fails to comply with this duty.  *Durham*, 97 F.3d at 866-868 (holding that a nurse and a security guard at a state hospital may be liable under Section 1983 where they do not take action to prevent a patient from being beaten).  *See also McHenry v. Chadwick*, 896 F.2d 184 (6th Cir. 1990)(a correctional officer who observes an unlawful beating may be liable under Section 1983 even though he did not actively participate in the beating), and *Bruner v. Dunaway*, 684 F.2d 422 (6th Cir. 1982), *cert. denied sub nom*, *Bates v. Bruner*, 459 U.S. 1171 (1983)(police officers who stood by and observed an unlawful beating by fellow officers could be held liable under Section 1983).

When faced with a qualified immunity defense, the court must first determine whether or not the plaintiff has stated a claim upon which relief can be granted. *Siegert v. Gilley*, 500 U.S. 226, 232 (1991); *Turner*, 119 F.3d at 429. If the court answers that question in the affirmative, the court goes on to determine whether or not the right allegedly violated was clearly established. *Turner*, 119 F.3d at 429. These are both purely legal questions. The immunity issue should not be resolved if there are factual disputes on which the issue of immunity turns such that it cannot be determined before trial whether the defendants' conduct violated clearly established rights. *Hall v. Shipley*, 932 F.2d 1147, 1154 (6th Cir. 1991). Defendants should be entitled to the defense of qualified immunity because there exists no factual dispute which could show that defendants took any improper conduct.

Accordingly, it is recommended that defendants' motion for summary judgment (docket #45) be granted, dismissing this case in its entirety. It is further recommended that plaintiff's motion for summary judgment (docket #59) be denied.

Further, if the court adopts this recommendation the court should decide that an appeal of this action would not be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the court grants defendants' motion for summary judgment, the court can discern no good-faith basis for an appeal. It is recommended that should the plaintiff appeal this decision, the court assess the $255 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he should be required to pay the $255 appellate filing fee in one lump sum.

*NOTICE TO PARTIES*: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within ten days of your receipt of

this Report and Recommendation.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich.

LCivR. 72.3(b).  Failure to file timely objections constitutes a waiver of any further right to appeal

of those issues or claims addressed or resolved as a result of the Report and Recommendation.

*United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140

(1985).


                                        /s/ Timothy P. Greeley
                                        TIMOTHY P. GREELEY
                                        UNITED STATES MAGISTRATE JUDGE

Dated:  August 9, 2005